*181 OPINION OF THE COURT
David B. Saxe, J.
At this juncture, the plaintiff husband has one remaining cause of action for divorce on grounds of adultery. The defendant wife has two causes of action for divorce: one on grounds of abandonment, the other on grounds of adultery.
As to plaintiff’s claim of adultery, I have already held that a prima facie showing on the defendant’s affirmative defense of recrimination had been made, but plaintiff was given the opportunity to rebut it. Inasmuch as no evidence was introduced in rebuttal, I now hold that neither party is entitled to a divorce on grounds of the other’s adultery (Domestic Relations Law § 171 [4]).
The only issue is therefore whether Mrs. Merrick has established abandonment of her by Mr. Merrick.
The facts are found to be as follows:
The parties were married (for the second time) on August 30, 1983. At that time, Mr. Merrick was subject to a conservatorship of which Mrs. Merrick was conservator; this conservatorship was terminated on January 30, 1985. The parties resided together in an apartment at the Galleria on East 57th Street in Manhattan, and traveled together extensively. In 1985, they moved into a townhouse on East 71st Street.
In the fall of 1985, Mr. Merrick moved out of the townhouse and into an apartment in the Dorchester at 110 East 57th Street, and then shortly thereafter into an apartment in the Galleria. Mr. Merrick’s move was prompted by his difficulty with the stairs in the townhouse. Although Mrs. Merrick did not move into the apartment with her husband, the couple continued to remain in close daily contact, occasionally still traveled together, and acted as a married couple in a number of respects. Mr. Merrick remained involved in Mrs. Merrick’s search for a child to adopt, and they both signed the paperwork necessary to initiate adoption proceedings for the two children (although Mr. Merrick subsequently repudiated his position). They looked for new living quarters together, and jointly purchased (and planned to move into) adjoining apartments on Park Avenue in July 1988, although these plans were abandoned in September 1988 when Mr. Merrick decided against the move and declined to finance the planned renovations.
*182 In November of 1988, Mr. Merrick instructed Irving Austin, his live-in health aide, to bar Mrs. Merrick from access to his Galleria apartment.
In December 1988, he ceased providing Mrs. Merrick with financial support.
In early February 1989, Mr Merrick went to Florida. When he returned to New York in March 1989, it was with his paramour, Natalie Lloyd. In April or May of 1989 Ms. Lloyd fired Mr. Austin as Mr. Merrick’s assistant.
A cause of action for divorce on grounds of abandonment (Domestic Relations Law § 170 [2]) requires proof of: (1) departure or exclusion from the marital residence; (2) lasting for a period of over one year prior to commencement of the action; (3) which departure or exclusion is unjustified; and (4) against the will of and without the consent of the complaining spouse. (See, Schine v Schine, 31 NY2d 113, 119 [1972].)
As to the first element, Mr. Merrick contends that it is not satisfied because the Galleria apartment in which Mr. Merrick resided was not the marital residence. He further argues that when parties live apart by mutual consent, abandonment cannot be established.
It must be recognized at the outset that the nature of the parties’ marital relationship was quite unusual. When they began to reside apart, they continued to maintain an ongoing close daily relationship. This is not a standard consensual separation. Indeed, the credible evidence demonstrated that the move out of the townhouse was prompted by Mr. Merrick’s difficulty in navigating the stairs of the townhouse, and further, that the parties continued thereafter to look for a new more suitable residence to purchase and reside in jointly. Under such circumstance, I conclude that both parties’ residences were "marital”.
I am aware that some cases define "abandonment” in terms of "separation” (see, e.g., Belandres v Belandres, 58 AD2d 63, 64 [1st Dept 1977] [" 'In order to establish abandonment it must be shown that the separation is against the will and without the consent of the complaining spouse’ ”]). However, the Merricks’ unusual circumstances initially involved a separation of living quarters without a concomitant severance of the marital relationship or connection. This is not the type of separation to which these cases refer.
No case law contains facts on all fours with those presented here. Thus, those cases which discuss parties separating by mutual consent I find to be inapplicable here.
*183 Moreover, as to the argument that the lockout from the Galleria apartment was not from the "marital residence”, the Court of Appeals has indicated that the lockout may be from a residence other than the "marital abode”: "Where the wife changes the lock on the entrance door of the marital abode, or where she insists on living, thus effectively excluding the husband, this act, unless justified, constitutes abandonment” (Schine v Schine, 31 NY2d, at 119 [1972], supra [emphasis added]). Defined by those terms, in November 1988 Mr. Merrick indeed locked Mrs. Merrick out of the abode where he insisted on living, thus for the first time effectively excluding Mrs. Merrick from both the apartment and his daily life. Under these unique circumstances, I conclude that the lockout constituted an abandonment.
Inasmuch as the lockout continued through service of the counterclaim in March 1990, the abandonment was for a period of more than one year.
No evidence was offered at trial — indeed, none was included in the pleadings — justifying the lockout (see, Maryon v Maryon, 60 AD2d 623 [2d Dept 1977]).
To support his argument that Mrs. Merrick consented to the abandonment, plaintiff relies on her consent to his move to the Galleria. However, I have already found that his move to the Galleria was not a separation or an abandonment, but rather represented the maintaining of two marital residences.
It was the lockout which constituted the abandonment, and as to that, Mrs. Merrick’s testimony, which I have determined to be credible, indicated that she made numerous efforts to change her husband’s mind. Plaintiff asserts that Mrs. Merrick did not object, based upon the testimony of Irving Austin that on the day of the lockout, Mrs. Merrick did not question the decision or ask to speak to Mr. Merrick. However, this merely reflects that the manner of her objection was slower and less dramatic than one involving pounding on the door and yelling demands.
Finally, I turn to Mr. Merrick’s contention that Mrs. Merrick made factual assertions in the context of the adoption proceedings which are inconsistent with her assertions in this divorce action. If indeed her statements in the adoption proceeding contradict her position here, she should not be permitted to maintain the newly adopted position in this action. "The doctrine of judicial estoppel holds that a party successfully taking a position in one proceeding may not thereafter *184 assume an inconsistent position in a subsequent proceeding” (Kalikow 78/79 Co. v State of New York, 174 AD2d 7, 11 [1st Dept 1992]).
However, upon examination, the documents submitted and assertions made by Mrs. Merrick in the adoption proceeding do not present a clear inconsistency.
In both cases, Mrs. Merrick has consistently asserted that from 1985 through 1988, the parties maintained and lived in two separate residences but remained committed to the marital relationship, until Mr. Merrick decided to exclude her from his residence and his life in late 1988.
The adoption petitions dated November 21, 1988 recited that the parties were "living together as husband and wife” but gave a different residence address for each. They do not specifically state that Mr. Merrick excluded Mrs. Merrick from his marital residence, but I do not view this lack of affirmative acknowledgment of the new development as an impediment to her position here. At that time the change in the parties’ relationship was quite recent, and Mrs. Merrick had no way of knowing then whether Mr. Merrick’s conduct was caused by a temporary, idiosyncratic decision or represented a permanent breach of the marital relationship.
Similarly, Mrs. Merrick’s affidavit of May 24, 1989, submitted to the Surrogate’s Court, acknowledged that for the prior several months, Mr. Merrick had refused to see her and the children — including his biological children. She further acknowledged that in mid-September 1988, Mr. Merrick had changed his mind about the parties renovating and moving into the adjoining apartments they had purchased.
Her attorney’s affirmation stated that Mr. Merrick "does not now live with [Mrs. Merrick and the children] and on information and belief, is free to choose whether or not to do so in the future.” This assertion neither admits nor denies the lockout, but indicates that Mrs. Merrick was still willing to resume the marital relationship as it had existed before the lockout. I do not perceive this statement as inconsistent with Mrs. Merrick’s position at trial.
Accordingly, I accept Mrs. Merrick’s testimony as to the parties’ marital relationship and find that Mr. Merrick’s exclusion of Mrs. Merrick constituted an abandonment.
In view of the foregoing findings, Mrs. Merrick has demonstrated entitlement for divorce on grounds of abandonment.