■ Veta James, Appellant, v George James, Respondent. [786 NYS2d 336]—In an action for a divorce and ancillary relief,

the plaintiff appeals from a judgment of the Supreme Court, Kings County (Deutsch, J.H.O.), dated February 27, 2003, which, after a nonjury trial, dismissed the complaint on the ground that she failed to prove her cause of action for a divorce on the ground of abandonment.

Ordered that the judgment is reversed, on the law and the facts, with costs, the complaint is reinstated, and the matter is remitted to the Supreme Court, Kings County, for the entry of an interlocutory judgment of divorce and for further proceedings on the complaint.

The plaintiff established a prima facie case on her cause of action for a divorce on the ground of abandonment, and the defendant failed to raise the defense of justification. Accordingly, the plaintiff should have been granted a divorce on the ground of abandonment (*see* Domestic Relations Law § 170 [2]; *Diemer v Diemer*, 8 NY2d 206 [1960]; *Pascarella v Pascarella*, 210 AD2d 915, 916 [1994]; *Maryon v Maryon*, 60 AD2d 623 [1977]; *Del Galdo v Del Galdo*, 51 AD2d 741 [1976]). We reach no other issues at this time. Ritter, J.P., H. Miller and Crane, JJ., concur.

S. Miller, J., concurs, with the following memorandum: I enthusiastically concur with the majority's determination to reverse the order dismissing the plaintiff wife's complaint, and to grant her a divorce on the ground of abandonment. I write this concurrence because in my view, issues raised by this appeal concerning the definition of abandonment and the nature of justification, which the majority chose not to reach, should be reached because of the dearth of authority providing guidance.

Veta James was entitled to a divorce on the ground of abandonment not only because George James failed to plead or prove justification as the majority concludes, but because he in fact abandoned her, when, after committing acts of domestic violence resulting in his removal from the marital residence for a year, he never sought to return and stayed away for six years. During that period of time, he was never discouraged or prevented from returning. His removal from the marital home pursuant to an order of protection, while not initially voluntary, was not justified.

The facts are largely uncontroverted. The plaintiff, Veta James (hereinafter Veta), and the defendant, George James (hereinafter George), were married. Their union produced two children, one of whom was under the age of 21 in 2002 when Veta commenced this action for divorce. The record reveals little about the parties' life together, but the marriage was apparently volatile. In February 1996 Veta obtained an order of protection requiring George to stay away from the marital residence for

one year as a result of his verbal and physical abuse. George thereupon removed himself to another residence in which he remained for the next six years and apparently to date.

The testimony at trial demonstrated that during the years of George's absence, George never contacted Veta, nor made any overtures or offers to return. Veta never changed the locks to the marital home, and expected George to return after the expiration of the order of protection. She never did anything to discourage his return. While Veta didn't expressly urge him to return, she explained that this was because George knew he was entitled to do so. It would have been "agreeable" to Veta had George returned, but, he just "would not listen." Veta telephoned George at his residence, but he did not call her. Veta visited George's residence, but he did not visit her's. Veta eventually learned that George was sharing his residence with another female.

After the nonjury trial, the Supreme Court granted George's motion to dismiss Veta's complaint finding that she failed to prove her cause of action for a divorce on the ground of abandonment since she never expressly encouraged his return.

Abandonment is almost always a question of fact (*see Silbert v Silbert,* 22 AD2d 893 [1964], *affd* 16 NY2d 564 [1965]). Pursuant to Domestic Relations Law § 170 (2), an action for a divorce on the ground of abandonment may be maintained when the defendant abandons the plaintiff for a period of one or more years. "The essence of . . . abandonment" is the failure of one spouse to fulfill the " 'basic obligations springing from the marital contract' " for one or more years (*Diemer v Diemer,* 8 NY2d 206, 210 [1960], quoting *Mirizio v Mirizio,* 242 NY 74, 81 [1926]). Such conduct must be unjustified and not consented to by the abandoned spouse (*see Schine v Schine,* 31 NY2d 113, 119 [1972]; *Haymes v Haymes,* 221 AD2d 73, 76 [1996]; *Hage v Hage,* 112 AD2d 659 [1985]). A temporary departure with intent to return is not an abandonment (*see Bohmert v Bohmert,* 241 NY 446 [1926]). The abandoning party must have demonstrated a hardening of resolve not to return (*see Wallin v Wallin,* 233 AD2d 699, 700 [1996]; *Hage v Hage, supra* at 661). Justification has been held to constitute an affirmative defense to a cause of action for a divorce on grounds of abandonment; i.e., where the acts of one spouse require the other to leave the marital home (*see Del Galdo v Del Galdo,* 51 AD2d 741 [1976]). As noted by the majority, it has been further held that once the plaintiff makes out a prima facie case of abandonment, a judgment of divorce will be granted unless the defendant pleads and proves justification (*see Maryon v Maryon,* 60 AD2d 623 [1977]; *Pascarella v Pascarella,* 210 AD2d 915, 916 [1994]).

The issue before us on appeal was whether George's conduct in removing himself from the marital residence and remaining away for six years constituted an abandonment, and, if so, whether it was justified. Clearly his departure was not "voluntary," but involuntariness in these circumstances does not equate with justification.

The facts of the instant case present an unusual abandonment fact pattern. Although George was ordered to leave the marital abode due to his abusive conduct toward Veta, his volitional acts of domestic abuse directly caused his departure. In my view, he must be charged with his own misconduct. The same rationale is employed in support cases. An incarcerated noncustodial parent may not obtain a downward modification of child support due to lack of income because the incarceration was the result of intentional criminal conduct, which may not inure to the benefit of the incarcerated spouse (*see Matter of Knights v Knights*, 71 NY2d 865 [1988]; *Matter of Gaudio v Gaudio*, 280 AD2d 600 [2001]; *Romanous v Romanous*, 181 AD2d 872, 873 [1992]). So too, in this case, that George was ordered to leave the marital residence because of his misconduct does not entitle him to the defense of justification (*cf. Keely v Keely*, 28 Misc 2d 955 [1961]). Moreover, the order of protection expired after one year, but he stayed away for six years, establishing a new household and life for himself. Clearly the evidence proved George's intent and hardened resolve not to return, i.e., his abandonment.

The Supreme Court, Monroe County, in *Brown v Brown* (82 Misc 2d 215 [1975]), considered and determined an analogous matter. The husband in *Brown* was convicted of an undisclosed felony, and served a prison sentence of at least 10 years. While he was incarcerated the wife relocated to California and began a new life. The husband sued for a divorce on the ground of abandonment.

Noting a lack of New York precedent on the question of whether the husband's imprisonment due to his criminal activity constituted an abandonment, the court answered the question in the affirmative, finding that the incarcerated spouse abandoned his wife, and that she did not abandon him. The court recognized a split in the law of other jurisdictions, but cited with approval a New Jersey case, *Brady v Brady* (98 NJ Super 600, 238 A2d 201 [1968]), which held that the separation of spouses because of imprisonment for a conviction is essentially willful, albeit externally enforced, constituting desertion by the imprisoned spouse. Similarly, the *Brady* court held that even had an offer been made to return, it would not have

been at a reasonable time and would not have altered the abandonment. Interestingly, the *Brady* court relied on a 1921 New Jersey case, *Csanyi v Csanyi* (93 NJ Eq 11, 13, 115 A 76, 78 [1921]), where that court stated: "I make no doubt that if a husband brutally assaults his wife, and immediately after the attack she causes his arrest for her protection, that she may treat the separation so caused as a constructive desertion on the husband's part, *commencing from the time of the assault.*" (*Brady v Brady*, 98 NJ Super at 602, 238 A2d at 201.)

*Brown* stands for the proposition that a spouses's wrongful conduct leading to his removal from the home is, in effect, a voluntary act chargeable to that wrong-doing spouse. Thus, here, George's misconduct toward Veta, resulting in his expulsion from the marital home in accordance with the order of protection Veta obtained, was not a justified departure so as to defeat a claim of abandonment. The fact that George never sought to return or never made any overtures seeking to reclaim the marriage demonstrated his hardened resolve to abandon Veta permanently.

In its written order dismissing Veta's complaint, the Supreme Court cited Veta's failure to prove abandonment since following the expiration of the order of protection she "made no effort to have [George] return to the household. She never communicated to him that she wanted him to return." This was error. There is no authority requiring an abused and abandoned spouse to make overt efforts and affirmatively invite the deserter, her abuser, to come home. True, if George had made a bona fide effort to return and Veta rejected his efforts, her conduct might well have vitiated her claims of abandonment. The evidence in this case is, however, entirely to the contrary. Veta never changed the locks to the home. Veta called George and he never called her. Veta visited George's residence; he never visited her. George never sought by word or deed to seek reconciliation or evinced any interest in returning to the former marital residence. Indeed, were we to require the victim of abuse, abandoned by the abuser, to plead for his return where he seeks no reconciliation or interest in returning to the marital residence in order for her to establish his abandonment, we would be creating a novel and inequitable precedent.

Moreover, as noted above, George never pleaded justification as an affirmative defense in his answer nor sought to prove it during the trial, and justification has been held to be an affirmative defense to a cause of action based on abandonment (*Del Galdo v Del Galdo, supra*), and must be pled and proved. A failure to do so waives the defense (*see McNair v McNair*, 262 AD2d

1048 [1999]; *Pascarella v Pascarella, supra*; *Maryon v Maryon, supra*).

In sum, Veta was entitled to a divorce on ground of abandonment because she proved that George abandoned her.